[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties appeared in court with their respective attorneys and also presented other witnesses and their exhibits to the court. After due consideration of all the evidence admitted, the following findings, conclusions and order are made.
1. The parties were married at Branford, Connecticut on February 10, 1984.
2. One minor child was born to the parties on February 27, 1985. His name is Christopher Aaron Diglio.
3. The parties have both lived in the State of Connecticut for more than one year prior to June 27, 1989, the date of filing the complaint in this action.
4. Neither party was receiving assistance from the State of Connecticut at the time of the hearing, nor at any time during the marriage.
5. At the time of the hearing the plaintiff was thirty-four years old and the defendant, 36.
6. The plaintiff graduated from high school and had an additional year of study at a business school.
7. The plaintiff, who was working before her marriage, continued working after her marriage until two week prior to the birth of the child, Christopher. Her principal category of work is in the legal field as a secretary. She did this from 1979 to July 1981 with a law firm. Her gross earnings during this period were 275. per week. She again was employed by a law firm from September 1981 for a period of two and one-half years. She the had two more positions, not in the legal field, of approximately six months each. After a short period she again secured employment as a legal secretary and worked here for approximately ten months to mid February 1985 a few week before Christopher's birth. During this last period she again grossed $275. per week. Her earnings figures are from her testimony.
8. On her financial affidavits of November 12, 1989 and April 23, 1990, at which times she worked for the same law firm, she set forth the same gross weekly CT Page 2808 earnings of $405., with total deductions of $93.66 (WH, S.S. and Med. Ins.) with a resulting net of $311.34. However, her financial affidavit of October 2, 1990 reported an increase in gross wages of $10. to $415 per week with total deductions of $96.42 and a net weekly wage of $318.58. She also reported additional weekly income from pendente lite order of the Court of $125. Temporary alimony and $100. child support. Total net weekly income was $543.58. Total weekly expenses reported were $644. Her total liabilities amounted to $30,062.
On this last financial affidavit the plaintiff valued the family house, 23 Collins Dr., Brawford, Ct. at $125,000. The mortgage was $46,000. with a resulting equity of $79,000.
It should also be noted that, following the birth of the child and until she secured her most recent position as a legal secretary, she assisted her husband in his work performing many functions which released him to do the work that he was trained to do.
9. The plaintiff has had a history of depression which attributes to her husband. She also suffered from a spastic colon for several years. She was hospitalized for a week in November 1985 and again in July 1988. At the hearing, however, the plaintiff testified that her health was then very good. Again it is to be noted that the plaintiff appeared to be quite obese. She claimed to have been helped with her depression by taking a prescribed drug, Prozac.
10. The defendant attended high school leaving in his third year. He continued thereafter for additional study at the West Haven Trade School. In 1980 he was sent by the Southern New England Telephone Co. to a technical school for additional schooling and training. While at trade school he studied refrigeration and air conditioning. For a short time early he did some landscaping work. At age 19 he worked for about 1 1/2 years in a factory. In 1977 served for a year as a building superintendent. With S.N.E.T. he served as a building equipment maintenance person and made necessary repairs. He left this position to go with Anderson Controls, who make him such a good offer, he could not resist. It was also at S.N.E.T. that the defendant meet the plaintiff.
11. The parties, after a short courtship, rented an CT Page 2809 apartment in 1983 and lived together in Milford for about a year. Early in 1984 they moved to the Collins Dr. residence a renters and then decided to marry. At this time the defendant was employed at Andover Controls and was doing part time free lance work with the acquiescence of his employer.
12. At the time of the hearing in the case, the defendant's principal business was doing subcontract work for S.N.E.T. For several years he had also been selling equipment to Yale University. In October 1990 the defendant testified that his business had slowed down. The defendant is a heating and air conditioning consultant and also performers repairs and sales of equipment.
13. The defendant an financial affidavits of October 3, 1990 and November 7, 1990 listed gross income from his business at $1943. with $1491. of business expenses leaving a net earning figure of $452. per week. By extending the net for 52 weeks we have an annual figure of $23,504. The same affidavits list personal living expenses of $541. per week which on an annual basis of $28,132 for exceed his net profit from his business. Added to this, from the affidavits is the sum of $150. per week which is claimed to have been spent in reducing liabilities set forth. This would add approximately $7900. annually. His financial affidavit of a year earlier (11/13/89) showed a weekly net loss of ($333.) with gross income of $2200. and business deductions of $2533. On this latter affidavit of November 7, 1990 with a gross income of $1943 the "cost of goods: is listed at $569. less than one-third. In this area the defendant has made a marked improvement.
14. The defendant's best report, however is contained in his financial affidavit of July 26, 1989. His gross weekly income is $1326, deductions are $649., and net weekly is $677.
15. The tax returns for the parties reveal the following: the defendant earned while employed by others, as following: 1984, $35,000, 1985, 38,000, and from 1986 on there are no outside employment figures. In 1984 he started his own self-employment and suffered a $3600 loss that year. This became a gain of $13,468 in 1985 and escalated to 35,026 in 1986. In 1987 there was a dip to $29,000 and a rise to $40,000 in 1988. In 1989 there was again a dip to $29,000. The business figures for 1989 reveal gross income of $160,447 and "cost of goods" of $95,877 of which $7900 represented outside labor costs and $87,000 the costs item was more than 50% of the gross income. There is something very wrong here. The defendant is CT Page 2810 not operating at a sufficiently profitable margin to survive. There is also no question in my mind that the defendant has a much greater earning potential than his net of $452.
16. The defendant's earnings averaged on a weekly basis as follows for these years: 1985, $1000., 1986, $673., 1988, $770., and 1989, $577. The average for these four years comes to $755 per week.
17. The plaintiff's financial affidavit of 7/11/90 lists her gross weekly earnings at $415.00 with deductions totalling $96.00 for withholding and social security.
18. There is no question that this marriage has broken down irretrievably and that the parties at this time have no reasonable prospect of reconciliation. There is too much bitterness between them and not much compatibility. There was much testimony regarding fault. Both contributed to the breakdown of this marriage. However, on a comparative fault basis I do find that the defendant was more at fault. It would be too numerous for this memorandum to set forth the forms of conduct and the times wherein such conduct occurred for both parties.
19. The parties entered into a stipulation regarding custody and visitation of the child. It provided for joint custody with physical custody and final decision making authority in the mother. Visitation is to follow the recommendation contained in the report of the Family Relations Division. The defendant's additional request contained in the Memorandum filed November 28, 1990 is reasonable in part and will be so granted. The defendant shall be expected to call for and return his child when he exercises his visitation rights. However, if for good reason, he is not able to act, only a member of his family, mother, father, brother or sister, aunt or uncle shall pick up or return the child.
20. Although not specifically set forth above, I do find that the defendant is a far superior income producer than the plaintiff. He will also be better able to acquire and accumulate assets than the plaintiff. For a few years the plaintiff will need financial assistance from the defendant because she will have to make some time available for the care of Christopher. However, this should not be a major interference with her working.
21. The criteria set forth in the Connecticut General Statutes relating to alimony, division of property, child support and counsel fees have been reviewed and considered in fixing the financial order.
In consideration of all of the foregoing the following Orders of the Court are now entered: CT Page 2811
a. A decree dissolving this marriage may enter on the ground of irretrievable breakdown.
b. The defendant is ordered to pay in full any arrears owed to the plaintiff under existing pendente lite orders for alimony and support. These are to be paid in four equal monthly installments commencing with the first on Monday, April 8, 1991 and shall be made in addition to the permanent order hereinafter set forth.
c. The defendant shall pay to the plaintiff forty ($40.00) per week as permanent periodic alimony for a period of not more than five years commencing April 12, 1991. This order shall not be modifiable so as to extend the term beyond five years and alimony shall cease on the occurrence of the earliest of the following: 1. death of either party, 2. remarriage of the plaintiff, 3. cohabitation pursuant to the statute.
d. The defendant shall pay to the plaintiff $200.00 per week for the support of his child, Christopher.
e. In accord with the stipulation of the parties, it is ordered that the parties shall have joint custody of Christopher with the principal place of residence and the final decision making authority in the mother. Visitation shall be as recommended in the report of the Family Relations Division. The defendant shall call for and return his son. If for good reason, he is unable to do either, only a member of his family shall be permitted to act in his place. Failure to follow this condition shall result in a forfeiture of the particular visitation.
f. The plaintiff shall maintain the first Colony life insurance policy and the defendant shall maintain his Travelers insurance policy with the child named as sole and irrevocable beneficiary on each policy until his eighteenth birthday. The first policy is in the face amount of $50,000. and the second $75,000. Neither party shall borrow against these policies without express permission of the court in advance; and shall give notice to the other in writing from the carrier written 60 days that each policy is in force and will renew such notice annually.
g. The defendant shall maintain blue cross, blue shield and major medical insurance or the equivalent thereof including prescriptive medicines for the benefit of Christopher during his minority. The parties shall share the payment of uninsured and unreimbursed medical-dental expenses as follows: the defendant shall pay two-thirds and the plaintiff shall pay one-third. In this instance the parties must agree on orthodontic, ophthalmological, psychological and psychiatric expenses for the CT Page 2812 child before being incurred except in cases of true emergency when the parent the having physical custody of the child is authorized to act. In all other cases agreement must not be unreasonably withheld. These provisions for medical insurance are subject to Conn. Gen. Stat. 46b-84(c).
h. 1. The former family residence at 23 Collins Drive, Branford shall be sold as soon as possible. The parties shall agree upon a realtor and a selling or asking price written 60 days. Failing to do so, either party may move for a hearing wherein the court shall make the selection of realtor and fix the selling or asking price.
2. Upon completion of the sale, the expenses of the sale customarily fixed, the mortgage the due and all other customary charges shall be deducted from the selling price. From the net proceeds remaining the defendant shall be entitled to receive the sum of $7500. The balance thereafter shall be equally divided between the parties.
i. The attorney for the child is awarded the sum of $3650. as counsel fees. The plaintiff shall pay $1460, and the defendant shall pay $2190, The plaintiff has paid $280. and the defendant 420. Each shall pay one-half of the remaining balance written ninety days and make final payment of the then remaining balance written one hundred eighty days thereafter.
j. The defendant is awarded his business known as Mechanical Automotive as his sole property. The plaintiff shall have on interest therein. He shall hold the plaintiff harmless.
k. The defendant shall have the 1989 Chevrolet Van as his sole property and again shall hold the plaintiff harmless.
l. The plaintiff shall have the Plymouth Acclaim as her sole property and shall hold the defendant harmless.
m. The defendant shall have as his sole property the Brawford Savings checking account and the shares of the Vanguard IRA.
n. The funds in the S.N.E.T. Credit Union IRA shall be divided equally between the parties. Any penalties that may be incurred in paying one-half of said account to the plaintiff shall be shared equally.
m. The plaintiff shall retain her Vanguard IRA as her sole property.
p. Each of the parties shall be solely responsible for the liabilities set forth on their financial affidavits of October CT Page 2813 and November 1990 except as herein otherwise specifically provided and hold the other harmless.
q. The defendant shall pay to the plaintiff on account of counsel fees the sum of seven thousand ($7,000.) dollars. This shall be paid in twenty (20) equal monthly payments commencing May 1, 1991 and shall be paid directly to the plaintiff's attorney.
r. Any personal property not divided shall be referred to the Family Relations Division for mediation. If unsuccessful, the matter shall be referred to the court with a recommendation.
Counsel for the parties shall collaborate in presenting an appropriate judgment file for approval.
STATE TRIAL REFEREE.